**Opinion issued April 15, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00300-CV

———————————

## MICHELLE HUDSON, Appellant

## V.

## MEMORIAL HOSPITAL SYSTEM, MEMORIAL HERMANN HEALTH SYSTEM, THYSSENKRUPP ELEVATOR CORPORATION, AND C.B. RICHARD ELLIS, INC., Appellees

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2016-83958

## MEMORANDUM OPINION

In this personal injury suit, Michelle Hudson challenges the trial court's

summary judgment rendered against her in favor of Memorial Hermann Health

System[1], CB Richard Ellis, Inc., and ThyssenKrupp Elevator Corporation. Hudson raises two issues on appeal. She contends that the trial court erred in granting summary judgment against her because it incorrectly applied principles of premises liability rather than principles of ordinary negligence to her claims, and she asserts that there are genuine issues of material fact with respect to her claims, precluding summary judgment.

We affirm.

## Background

Hudson sued Memorial Hermann, claiming that she was injured on Memorial Hermann's property. At the time, Hudson was employed by Memorial Hermann, a non-subscriber under the Texas Workers' Compensation Act. In her first amended petition, Hudson alleged that she "was in an elevator on [Memorial Hermann's] premises," when "the elevator stopped suddenly and violently." She stated that she had "then pushed the elevator buttons and felt what seemed like an electric shock."

---

[1] In her original and first amended petitions, Hudson listed both Memorial Hermann Health System and Memorial Hospital System as defendants. In its answer, Memorial Hermann Health System stated that it was "incorrectly designated as 'Memorial Hospital System'" and indicated that Memorial Hermann Health System and Memorial Hospital System were the same entity being incorrectly referred to interchangeably by Hudson. The record does not reflect any answer or appearance by Memorial Hospital System. In her brief, Hudson refers to Memorial Hermann Health System, which was her employer and the owner of the premises where she claimed to have been injured in this suit, primarily as Memorial Hospital System. To avoid confusion, we refer to the party only as Memorial Hermann Health System ("Memorial Hermann").

Hudson also sued CB Richard Ellis, Inc. ("CBRE"), which managed the premises, and ThyssenKrupp Elevator Corporation, which provided maintenance services for the elevator.

Hudson alleged that the malfunctioning elevator "was an unreasonably dangerous condition created by [the defendants'] failure to properly and timely maintain, control, inspect and/or service the improperly functioning elevator and/or warn of the unreasonably dangerous condition." Hudson alleged that the defendants had "deviated from the reasonable standard of care," which "they had a duty to exercise and [had] breached said duty through its [sic] negligent acts and omissions" of:

1. Failing to properly maintain the elevator in question;

2. Failing to regularly and systematically inspect the elevator in question so Defendants could make safe or warn of the dangerous condition;

3. Failing to properly inspect the elevator and elevator equipment;

4. Allowing an unreasonably dangerous condition to exist on the property;

5. Failing to correct the unreasonably dangerous condition;

6. Failing to correct the unreasonably dangerous condition before placing the elevator back into service;

7. Failing to properly inspect the elevator and the cause of its repeated failure condition before placing the elevator back into service;

8. Failing to warn Plaintiff of the unreasonably dangerous condition of the elevator and elevator equipment; and

9. Failing to discover the unreasonably dangerous condition.

Hudson also pleaded the doctrine of res ipsa loquitor.

Hudson further claimed that "[t]he conditions on the premises posed an unreasonable risk of harm because it is foreseeable that an improperly inspected and maintained elevator would malfunction and create an unsafe and unexpected hazard." Hudson alleged that the defendants' "negligent acts or omissions" proximately caused her "to suffer serious physical injuries." She sought damages for medical expenses, physical pain, mental anguish, and lost wages.

Although it was later shown in the summary-judgment proceedings that Hudson was an employee of Memorial Hermann at the time of her alleged injury and that Memorial Hermann was a non-subscriber under the Texas Workers' Compensation Act, Hudson did not allege in her first amended petition (her live pleading) that she was Memorial Hermann's employee at the time of the incident. The only statement Hudson made in her petition, related to her employment, was her allegation that she "was an invitee at the time of injury because she was on the premises for work purposes." In short, Hudson made no allegations that she was suing for injuries based on any duties Memorial Hermann owed to her in its role as her employer.

Memorial Hermann filed a no-evidence motion for summary judgment, asserting that Hudson had produced no evidence to support the required elements of her premises-liability claim. Specifically, Memorial Hermann asserted that there was no evidence (1) that the elevator, which Hudson claimed injured her, "had a condition that posed an unreasonable risk of harm," (2) that Memorial Hermann "had actual knowledge of the condition," or (3) that Memorial Hermann had "failed to exercise reasonable care to reduce or eliminate the risk."

Hudson responded to Memorial Hermann's motion by moving for a continuance to permit her to conduct additional discovery. The trial court granted the continuance.

ThyssenKrupp filed a combined traditional and no-evidence motion for summary judgment. In support of its no-evidence motion for summary judgment, ThyssenKrupp asserted that Hudson had presented no evidence of the elements of a negligence or premises-liability claim against ThyssenKrupp.

In support of its traditional motion for summary judgment, ThyssenKrupp offered the affidavit of Brent Early, its operations manager. Early testified that ThyssenKrupp provided "elevator maintenance services" to the elevators in the building where Hudson was allegedly injured. Early testified that the incident involving Hudson was reported to ThyssenKrupp on December 11, 2014, the day the incident occurred. He stated that the next day, ThyssenKrupp sent two of its

5

mechanics to inspect the elevator. The mechanics "inspected and observed the elevator's operation" and "confirmed" that the elevator was operating "correctly and without malfunction."

Hudson responded to ThyssenKrupp's combined motion for summary judgment. She offered her own deposition testimony in which she stated that, after the alleged incident, her supervisor, B. Hazard, had taken her to the building manager's office to report the incident. Hudson testified that she then heard Hazard tell the building manager that Hazard had also experienced problems with the elevator that same day. In addition, she asserted that ThyssenKrupp's negligence could be inferred by applying the doctrine of res ipsa loquitor.

Memorial Hermann filed a motion to reconsider its previously filed motion for summary judgment. Hudson responded by "incorporate[ing] by reference . . . all arguments presented and evidence attached to her responses" to ThyssenKrupp's motion for summary judgment.

CBRE also filed a combined no-evidence and traditional motion for summary judgment. In support of its no-evidence motion, CBRE claimed that Hudson had failed to adduce evidence supporting any element of a negligence or premises-liability claim.

Responding to CBRE's motion, Hudson offered her own affidavit in which she stated that prior to the date of her alleged injury, she had observed the elevator

6

malfunctioning on different occasions. She claimed that she "would then notice that the elevator would be shut down . . . for maintenance."

Hudson also offered the affidavit of B. Hazard, her former supervisor, who testified that she had also experienced the elevator malfunction on the same day as Hudson's alleged elevator incident. Hazard stated that she had accompanied Hudson to the building manager's office to report Hudson's incident. While there, Hazard reported that she, too, had experienced the elevator malfunction that day.

In addition, Hudson offered the two-page expert report of J.R. Freeman, a certified elevator safety inspector. In his report, Freeman opined that, based on his education and experience, the elevator "probably had a contactor failure." He stated that "[m]ore likely than not, this could [have] created a jerking or abrupt stop, or a clipping of a door lock which could create a jerking and stopping." After reviewing documentation related to the maintenance of the elevator, Freeman also noted that ThyssenKrupp had not produced certain 2014 maintenance records required by the administrative code regulating elevator safety. Freeman also opined that documentation produced by ThyssenKrupp did not reflect maintenance of the elevator that complied with industry standards.

Hudson filed supplemental responses (1) to Memorial Hermann's motion to reconsider its combined motion for summary judgment and (2) to ThyssenKrupp's combined motion for summary judgment. In the supplemental responses to

7

Memorial Hermann's and ThyssenKrupp's motions for summary judgment, Hudson stated that she was incorporating by reference her arguments and evidence offered in support of her response to CBRE's motion.

ThyssenKrupp filed objections to Hudson's evidence offered in support of her response to CBRE's combined motion for summary judgment. Specifically, ThyssenKrupp objected to Hudson's affidavit, Freeman's expert report, and Hazard's affidavit. CBRE also filed objections to the evidence, expressly adopting the objections filed by ThyssenKrupp. In addition, Memorial Hermann objected to Hudson's affidavit and to Freeman's expert report.

The trial court granted most of ThyssenKrupp's objections to the evidence and ordered Freeman's expert report and Hazard's affidavit struck from the summary-judgment record. The trial court also struck the majority of Hudson's affidavit from the record because her affidavit testimony was inconsistent with her earlier deposition testimony in which she had testified that she was not aware of any problems with the elevator before the alleged incident. This included the portions of Hudson's affidavit in which she stated that, prior to the alleged incident in this case, she had observed the elevator malfunctioning.

The trial court signed orders granting Memorial Hermann's no-evidence motion for summary judgment and the combined no-evidence and traditional motions for summary judgment of CBRE and ThyssenKrupp. The orders were

8

signed on the same day. The trial court did not specify whether CBRE's or ThyssenKrupp's motions were granted on no-evidence or traditional grounds. By granting the motions for summary judgment, the trial court rendered a take-nothing judgment against Hudson in favor of Memorial Hermann, CBRE, and ThyssenKrupp (collectively, "Appellees," hereafter).[2]

## Summary Judgment

In two issues, Hudson asserts that the trial court erred in granting Appellees' motions for summary judgment.

---

[2] The trial court signed separate orders granting each of Appellees' motions for summary judgment. The order granting Memorial Hermann's motion ordered that Hudson's "causes of action" against Memorial Hermann were dismissed with prejudice and that Hudson "take nothing by her claims" against Memorial Hermann. Similarly, the order granting ThyssenKrupp's motion provided that the motion was "granted in its entirety, and that Plaintiff Michelle Hudson take nothing from ThyssenKrupp on her causes of action, such causes of action being disposed of by this Judgment." The order granting CBRE's motion, which sought summary judgment on causes of action for ordinary negligence and premises liability, ordered that the motion was granted "in all its parts." Given the record, the orders, taken together, constitute a final judgment. *See Lehman v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("Because the law does not require that a final judgment be in any particular form, whether a judicial decree is a final judgment must be determined from its language and the record in the case."); *see also Ritzell v. Espeche*, 87 S.W.3d 536, 537–38 (Tex. 2002) (holding that summary judgment was final because it expressly ordered that plaintiff take nothing by his claims even though motion for summary judgment did not address claim added in amended petition after motion for summary judgment was filed); *In re Harris Cty. Hosp. Dist. Aux., Inc.*, 127 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (holding summary judgment order indicated finality because it ordered plaintiff's cause of action was "hereby dismissed with prejudice and that Plaintiff take nothing by her suit"); *Noorian v. McCandless*, 37 S.W.3d 170, 173 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)) ("[A] final judgment may consist of several orders that cumulatively dispose of all parties and issues.").

## A.    Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

A party seeking summary judgment may combine, in a single motion, a request for summary judgment under both the no-evidence and the traditional standards. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). To prevail on a no-evidence summary-judgment motion, a movant must identify "one or more essential elements of a claim or defense . . . as to which there is no evidence." TEX. R. CIV. P. 166a(i); *see B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020). The burden then shifts to the nonmovant to produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i); *B.C.*, 598 S.W.3d at 259.

A no-evidence summary judgment may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751

(Tex. 2003). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Id.*

To prevail on a traditional summary judgment, the movant bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). An issue is conclusively established if reasonable minds could not differ about the conclusion to be drawn from the facts in the record. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their

11

conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

**B.      Premises-Liability Law Governs Claim Against Memorial Hermann**

In her first issue, Hudson contends that the trial court erred by granting summary judgment for Memorial Hermann based on the legal principles governing premises liability rather than on the principles governing ordinary negligence. She argues that because she was employed by Memorial Hermann, a non-subscribing employer, and "was injured during the course and scope of her employment on premises owned and controlled" by Memorial Hermann, her injuries were "workplace injuries suffered by an employee and subject to the provisions of Chapter 406 of the Texas Labor Code." Hudson asserts the Labor Code required that her claim against Memorial Hermann be "determined by an ordinary negligence standard rather than a premises liability standard."[3] Hudson contends that, for this reason, she was not required to offer evidence of the elements of premises liability in her summary-judgment responses, rather, she was required only to offer evidence of the elements of ordinary negligence.[4]

---

[3]      Hudson now contends on appeal that, based on her status as an employee and Memorial Hermann's status as her non-subscribing employer, the elements of ordinary negligence—not those of premises liability—also apply to her claims against CBRE and ThyssenKrupp because they are liable as "agents" of Memorial Hermann.

[4]      Although premises liability is itself a branch of negligence law, it is a "special form" of negligence with elements that define a property owner or occupant's duty with

### 1. *Argument not preserved*

Hudson did not raise her argument that the trial court incorrectly applied the legal principles of premises liability rather than the principles of ordinary negligence in her summary-judgment responses. A nonmovant must expressly present to the trial court any reasons for avoiding the movant's right to summary judgment. *McConnell v. Southside ISD*, 858 S.W.2d 337, 343 (Tex. 1993); *see* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) ("A non-movant must present its objections to a summary[-]judgment motion expressly by written answer or other written response to the motion in the trial court or that objection is waived."). Because she did not raise this argument in her summary-judgment responses, Hudson failed to preserve this issue for our review, and we cannot consider it on appeal as a ground for reversal. *See* TEX. R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 343.

---

respect to those who enter the property. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). To prevail on a premises liability claim against a property owner, an injured invitee must establish four elements: (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee. *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014).

## 2. *Argument without merit*

Even if Hudson's legal argument is properly presented on appeal, we conclude it is without merit.

Hudson correctly points out that that an employer has a "duty to use ordinary care in providing a safe workplace." *LMC Complete Auto., Inc., v. Burke*, 229 S.W.3d 469, 476 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006)); *see* TEX. LAB. CODE § 411.103(1)–(3) (providing that each employer shall "provide and maintain employment and a place of employment that is reasonably safe and healthful for employees," "install, maintain, and use methods, processes, devices, and safeguards," and "take all other actions reasonably necessary to make the employment and place of employment safe"). Hudson also correctly points out that, under the Labor Code, if an employer elects to be a non-subscriber to workers' compensation insurance, as Memorial Hermann has, then a consequence of that choice is that the non-scribing employer may be sued for negligence by or on behalf of the employee "to recover damages for personal injuries or death sustained by [the] employee in the course and scope of the employment." TEX. LAB. CODE § 406.033(a), (d). And she accurately observes that the Labor Code strips the non-subscribing employer of certain defenses, including contributory negligence and assumed risk. *Id.* § 406.033(a). Hudson, however, incorrectly asserts that when an

14

employee sues a non-subscribing employer for personal injuries sustained in the workplace in the course and scope of her employment, the employee's claims are necessarily governed by principles of ordinary negligence, even when, as pleaded here, the employee's injuries are proximately caused solely by an alleged dangerous condition of the workplace premises, and the plaintiff-employee asserts no claim that her injuries were caused by a breach of the additional duties an employer owes to its employees.

The unmeritorious nature of Hudson's argument is revealed by the Supreme Court of Texas's opinion in *Austin v. Kroger Tex. L.P.*, 465 S.W.3d 193 (Tex. 2015). There, the court—in answering a certified question from the Fifth Circuit Court of Appeals regarding a premises-liability claim asserted by an employee against a non-subscribing employer[5]—confirmed that "an employer has the same premises-

---

[5] The certified question was as follows: "Pursuant to Texas law, including § 406.033(a)(1)–(3) of the Texas Labor Code, can an employee recover against a non-subscribing employer for an injury caused by a premises defect of which he was fully aware but that his job duties required him to remedy?" *Austin v. Kroger Tex. L.P.*, 465 S.W.3d 193, 199 (Tex. 2015). The supreme court provided the following answer:

> Under Texas law, an employee generally cannot "recover against a non-subscribing employer for an injury caused by a premises defect of which he was fully aware but that his job duties required him to remedy." As is the case with landowners and invitees generally, employers have a duty to maintain their premises in a reasonably safe condition for their employees, but they will ordinarily satisfy their duty as a matter of law by providing an adequate warning of concealed dangers of which they are or should be aware but which are not known to the employee. "The employee's awareness of the defect" does not

liability duty to its employees as other landowners have to invitees on their premises." *Id.* at 202. The court stated that, "[w]hile an employer's *liability* [to its employees] may differ from that of other landowners due to the statutory waiver of its defenses, its premises-liability *duty* is the same as that owed by landowners to invitees generally." *Id.* (internal citation omitted; emphasis in original). The supreme court clarified that an employer's premises-liability duty, which is the same general duty as other premises owners, was "a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Id.* at 203. Necessary to the *Austin* court's confirmation that a non-subscribing employer's premises-liability duty to its employee is the same as a landowner's general premises-liability duty to an invitee is the recognition that an employee's suit against her employer for

---

"eliminate the employer's duty to maintain a safe workplace," but with respect to premises conditions, that duty is ordinarily satisfied by warning the employee of concealed, unknown dangers; the duty to maintain a reasonably safe workplace generally does not obligate an employer to eliminate or warn of dangerous conditions that are open and obvious or otherwise known to the employee. Exceptions to this general rule may apply in premises liability cases involving third-party criminal activity or a necessary use of the premises. If an exception applies, the employer may owe a duty to protect the employee from the unreasonably dangerous condition despite the employee's awareness of the danger, and the [Texas Workers' Compensation Act] will prohibit a non-subscribing employer from raising defenses based on the employee's awareness.

*Id.* at 217.

workplace injuries may be based on premises-liability principles rather than on ordinary negligence principles. *See id.* at 202; *see Arce v. McGough*, No. 04-18-00064-CV, 2018 WL 4608464, at *3 (Tex. App.—San Antonio, Sept. 26, 2018, no pet.) (mem. op.) (citing *Austin* and recognizing that, regardless of whether plaintiff was contractor or employee of defendant-premises owner, duty owed to plaintiff by premises owner for claim arising from premises defect was the same; that is, "an employer's duty to make its premises reasonably safe for employees is identical to a landowner's duty to make its premises reasonably safe for invitees generally").

We note that the court in *Simon v. Johns Community Hospital* more directly addressed the argument raised by Hudson here, holding that when "an employee seeks damages [against her non-subscriber employer] for injuries caused by a dangerous [premises] condition, he or she must prove the elements of a premises-liability case." No. 03–07–00057, 2008 WL 2309295, at *3 (Tex. App.—Austin June 4, 2008, no pet.) (mem. op.). There, Simon, a nurse, was employed by a hospital, which was a non-subscriber. *Id.* at *1. She sued the hospital for injuries that she sustained when she slipped on a substance on the hospital floor. *Id.*

The hospital filed a no-evidence motion for summary judgment, asserting that there was no evidence that it had actual or constructive knowledge of the substance on the floor, an essential element Simon was required to prove to establish the

17

hospital's premises liability to her as an employee-invitee. *Id.* The trial court granted the hospital's motion. *Id.*

On appeal, Simon emphasized that she had pleaded general negligence theories of recovery based on her allegation that the hospital had not provided a safe workplace. *Id.* She insisted that she was "not required to prove the elements of a premises liability claim because an employer's duty to its employees to provide them a safe workplace is conceptually distinct and independent from the duties the employer owes to invitees generally." *Id.* at *2. The court rejected Simon's argument, recognizing that "[the] supreme court had stated the general principle that 'the nature of the duty of the landowner to use reasonable care to make his premises reasonably safe may, in all material respects, be identical with the nature of the duty of the master to use reasonable care to provide his servant with a reasonably safe place to work.'" *Id.* (quoting *Sears, Roebuck & Co. v. Robinson*, 280 S.W.2d 238, 240 (Tex. 1955), *rev'd, in part, on other grounds by Austin*, 465 S.W.3d at 212)). The court clarified that "[t]his does not mean that *every* negligence claim brought by an employee against a non-subscriber employer is inherently a premises liability suit." *Id.* at *3 (internal quotation marks omitted).

The court stated that "[t]he imposition of negligence liability for injury caused by a dangerous condition, as contrasted with injury that is the contemporaneous result of negligent activity, is what distinguishes a premises defect claim from a

18

claim of ordinary negligence." *Id.* at *2 (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). On appeal, Simon acknowledged that her "entire liability case revolve[d] on whether the substance on the floor was a dangerous condition." *Id.* The court stated, "Had there been issues in the instant case not purely dependent on the existence of this dangerous condition, and on Johns Community Hospital's knowledge of its presence, this would not have been a premises liability case." *Id.* at *3 (internal quotation marks omitted). But, when "an employee seeks damages for injuries caused by a dangerous condition, [as Simon did,] he or she must prove the elements of a premises liability cause of action." *Id.*

We are mindful that, in *Austin*, the Supreme Court of Texas clarified that "[i]n a typical premises-liability case, the landowner owes the invitee two duties: a duty to keep the premises reasonably safe and a duty not to injure the invitee through contemporaneous negligent activity,"[6] but, in a case in which "the landowner is also an employer and the invitee is also its employee, this additional relationship may give rise to additional duties, such as a duty to provide necessary equipment, training, or supervision." *Austin*, 465 S.W.3d at 215. The court observed that, although it had "addressed the interaction between premises-liability claims and

---

[6] Hudson raises no issue on appeal that summary judgment should be reversed because her alleged injuries were caused by a breach of Appellees' duty not to injure her through "contemporaneous negligent activity." Instead, her appellate argument focuses on the duties that Memorial Hermann owed to her as her employer.

negligent-activity claims on several occasions," it had "never addressed the interaction between premises-liability claims and an employer's other general negligence duties." *Id.* at 215–16.

In *Austin*, the employee-plaintiff had, in addition to asserting a premises-liability claim against his employer, alleged that his landowner-employer had failed "to provide a 'necessary instrumentality'" to safely do his job." *Id.* at 215. The court stated that the employee's "instrumentalities claim invoke[d] one of [the] additional duties [that an employer owed an employee]: the duty to furnish reasonably safe equipment necessary for performance of the job." *Id.* The court observed, "When an injury arises from a premises condition, it is often the case that any resulting claim sounds exclusively in premises liability, but that is not necessarily the case. An injury can have more than one proximate cause." *Id.* The court stated that the fact that the employee had alleged that a condition of the premises proximately caused his injury did not preclude an additional claim that the employer-landowner's negligent failure to provide the instrumentality also caused his injury. *Id.*

The *Austin* court determined that, as an employer, the landowner owed its employee "duties *in addition to* its premises-liability duty and its duty not to engage in negligent activities, including the duty to provide [the employee] with necessary instrumentalities." *Id.* at 216 (emphasis added). The court explained that an instrumentalities claim did not necessarily involve contemporaneous activity by the

20

employer. *Id.* The court rejected the employer's assertion that because the employee had not alleged any negligent activity by the employer-landowner contemporaneous with the employer's alleged failure to provide the instrumentality, the employee's failure-to-provide-instrumentality claim was barred. *Id.* However, as relevant to Hudson's appellate argument here, the supreme court did not hold that the additional duties owed by an employer to its employees replaces the premises-liability duty owed by an employer-landowner for claims arising from a premises condition and sounding exclusively in premises liability. *See id.* Rather, an employee-plaintiff's claim that her injuries were caused by a breach of the additional duties owed to her by her employer may be brought *in addition to* a claim that her injuries were caused by a breach of the premises-liability duty owed to her by her landowner-employer. *See id.*

Turning to the instant suit, a review of Hudson's pleadings reveals that her claim against Memorial Hermann sounds in premises liability. Although Hudson's amended petition contains separate headings of "Cause of Action: Negligence" and "Cause of Action: Premises Liability," "we . . . must look to the substance of a plea for relief, not merely its titles and headings, to determine the nature of relief sought." *Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 124 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 665 (Tex. 2010) (recognizing, in case in which plaintiff had divided petition

21

under headings "Negligence" and "Premises Liability," that health-care liability claim cannot be recast as another cause of action to avoid statutory requirements governing those claims and that whether pleading stated health-care liability depends on underlying substance of pleading, not its form).

"When the alleged injury is the result of the condition of the premises, the injured party can recover only under a premises liability theory." *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 163 (Tex. App.—Dallas 2011, no pet.) (citing *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992)). "Adroit phrasing of the pleadings" to encompass other theories of negligence does not affect application of premises-liability law to the claims. *McDaniel v. Cont'l Apartments Joint Venture*, 887 S.W.2d 167, 171 (Tex. App.—Dallas 1994, pet. denied) (op. on reh'g).

In her first amended petition, Hudson alleged that she was injured on Memorial Hermann's premises when "the elevator stopped suddenly and violently," and she "then pushed the elevator buttons and felt what seemed like an electric shock." Hudson expressly alleged that "[t]he elevator stopping suddenly and violently was an unreasonably dangerous condition." She alleged that her injuries were a result of the condition of the premises and that the property itself was unsafe. To the extent that Hudson asserted that Memorial Hermann was negligent in failing "to properly and timely maintain, control, inspect and/or service the improperly

22

functioning elevator and/or warn of the unreasonably dangerous condition," these allegations relate to Memorial Hermann's purported conduct in creating, failing to warn of, or failing to correct a condition on the premises that allegedly resulted in her injuries. *See In re Tex. Dep't. of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007) (holding that appellants' allegations that TxDOT failed to use ordinary care in designing, inspecting, maintaining, and employing others to inspect and maintain bridge and surrounding roadway pleaded cause of action for premises or special defect, not negligent activity, because activities listed by appellants "would be causes of the conditions at the scene of the accident," not contemporaneous activities that caused appellants' injuries); *see also Austin*, 602 S.W.3d at 203 (stating that, under premises-liability theory of recovery, landowner owes a "duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not"). Thus, as pleaded, Hudson's claim against Memorial Hermann was a premises-liability claim. *See Warner*, 845 S.W.2d at 259 (holding that when injury alleged resulted from condition of premises, injured party alleged only premises-liability claim); *see also Shaw v. Wells Fargo Bank,* No. 02-20-00011-CV, 2020 WL 5241188, at \*2 n.1, \*3 (Tex. App.—Fort Worth Sept. 3, 2020, no pet.) (mem. op.) (affirming summary judgment where defendant moved for no-evidence summary judgment only on claim for premises liability, even though plaintiff had pleaded "cause of action for premises liability,

23

negligence, and/or negligence per se," because plaintiff had alleged that "a premises condition caused her injuries," thus making plaintiff's claim a premises-liability claim).

Hudson's first amended petition also shows that she made no claims against Memorial Hermann based on its additional duties to her as her employer. The only statement Hudson made in her amended petition regarding her employment was that she "was an invitee [on Memorial Hermann's premises] at the time of injury because she was on the premises for work purposes." Hudson indicated that she was suing Memorial Hermann based on its status as the party that "owned, operated, controlled and/or occupied" the premise where she was injured. Hudson asserted no claim against Memorial Hermann based on its status as her employer. And she made no claim that her injuries were proximately caused by any breach of Memorial Hermann's duty to her as her employer to provide a safe workplace.

We hold that, even though the summary-judgment evidence later showed that Memorial Hermann was her employer, Hudson's claim against Memorial Hermann, as pleaded, sounded only in premises liability. Hudson raised no claims against Memorial Hermann based on any duties that it owed her in its role as her employer. *Cf. Austin*, 5 S.W.3d at 215–216. Thus, the trial court properly analyzed Hudson's claim against Memorial Hermann under the legal principles and elements of proof governing premises liability. *See Simon*, 2008 WL 2309295, at *2–*3.

24

We overrule Hudson's first issue.

## C.  Propriety of Summary Judgment

In her second issue, Hudson contends that the trial court erred by granting summary judgment in favor of Appellees "because genuine issues of material fact existed as to the elements [of] Hudson's negligence claims that precluded summary judgment."

### 1.  Premises-Liability Claim

In the trial court, Memorial Hermann filed a no-evidence motion for summary judgment, and ThyssenKrupp and CBRE each filed a combined no-evidence and traditional motion for summary judgment in which they asserted that Hudson could not produce more than a scintilla of evidence with respect to any of the elements of her premises-liability claim. *See* TEX. R. CIV. P. 166a(i); *see also Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014). (listing elements of premises liability when plaintiff is invitee). In her second issue, Hudson has not challenged the merits of Appellees' no-evidence motions for summary judgment on her premises-liability claim. Instead, Hudson continues to assert—as she did in her first issue—that the elements of proof for ordinary negligence, and not the elements of proof for premises liability, govern whether summary judgment in Appellees' favor was proper. Thus, because she has not challenged the merits of Appellees' motions for summary judgment as to her premises-liability claim, we must affirm the trial court's grant of

25

summary judgment as to that claim. *See Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 722 (Tex. App.—Fort Worth 2013, no pet.) (affirming no-evidence summary judgment as to gross negligence claim when appellant did not challenge merits of motion on that claim on appeal); *Kipp v. Dyncorp Tech. Servs., LLC*, No. 01-06-00906-CV, 2007 WL 3293719, at \*5 (Tex. App.—Houston [1st Dist.] Nov. 8, 2007, no pet.) (mem. op.) (affirming no-evidence summary judgment on premises-liability claim because, in trial court, movant asserted no evidence was produced by non-movant on each element of claim, but, on appeal, non-movant did not address two elements); *see also Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (proscribing reversal of summary judgment without properly assigned error).

### 2. Negligence Claim

As held in the first issue, Hudson has asserted a claim against Memorial Hermann based only on premises liability, not on ordinary negligence. However, it is less clear whether Hudson's claims against CBRE and ThyssenKrupp sound in premises liability or in negligence. Specifically, it is unclear from the record whether either CBRE, as property manager of Memorial Hermann's premises, or ThyssenKrupp, as the company that serviced the elevator, had the required control over the property to be liable under a premises-liability theory. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 474 (Tex. 2017) ("[T]he duty to make the premises safe or warn of dangerous conditions generally runs with the ownership

or control of the property, and a defendant's liability under a premises liability theory rests on the defendant's assumption of control of the premises and responsibility for dangerous conditions on it." (internal quotation marks omitted)); *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 424 (Tex. 2011) (recognizing that general negligence principles apply to contractor, which left premises in unsafe condition). Thus, we determine whether summary judgment was proper based on ordinary negligence against CBRE and ThyssenKrupp.

The elements of a negligence claim are (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015). In their respective combined no-evidence and traditional motions for summary judgment, CBRE and ThyssenKrupp listed each element of a negligence claim and asserted that Hudson could not produce evidence with respect to any of the elements. *See* TEX. R. CIV. P. 166a(i).

In her response to CBRE's no-evidence motion, which she incorporated by reference into her supplemental response to ThyssenKrupp's motion, Hudson pointed to Memorial Hermann's "case report, a document" filled out after the alleged incident, describing the incident as reported by Hudson and indicating that the elevator had been shut down following the incident. Hudson asserted that the case report was evidence showing that CBRE and ThyssenKrupp had breached their duty

27

of care to her. However, cases have long recognized that the mere occurrence of an accident is not itself evidence of negligence. *See Rankin v. Nash-Tex. Co.*, 105 S.W.2d 195, 199 (Tex. [Comm'n Op.] 1937); *Flores v. Rector*, No. 07-19-00274-CV, 2020 WL 4912921, at *4 (Tex. App.—Amarillo Aug. 20, 2020, no pet.) (mem. op.); *Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43, 48 (Tex. App.—San Antonio 2005, no pet.).

Hudson also cited her own affidavit as evidence that CBRE and ThyssenKrupp breached their duty of care to her. On appeal, she also points to Hazard's affidavit. However, the cited evidence is no longer part of the summary-judgment record. After granting objections to the affidavits, the trial court struck, from the summary-judgment record, (1) Hazard's affidavit, (2) the cited portions of Hudson's affidavit, and (3) Freeman's expert report. Hudson raises no challenge on appeal to the trial court's order striking her evidence from the record. When reviewing whether a summary judgment was properly granted, we may not consider evidence struck from the record because that evidence is not a part of the summary-judgment record considered by the trial court. *See McCollum v. The Bank of New York Mellon Tr. Co.*, 481 S.W.3d 352, 362 (Tex. App.—El Paso 2015, no pet.) (citing *Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 898 n.2 (Tex. App.—Austin 2010, no pet.); *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.)). Thus, we may not consider the struck portions of

Hudson's affidavit that she relied on in the trial court or Hazard's affidavit now cited by Hudson on appeal.

Without more, Hudson's summary-judgment evidence of a breach of duty falls short of raising a scintilla of evidence because it is "so weak as to do no more than create a surmise or suspicion" of fact.[7] *King Ranch, Inc.*, 118 S.W.3d at 751; *see also Flores*, 2020 WL 4912921, at *4 (holding that evidence showing merely that accident occurred was insufficient to demonstrate, for purposes of overcoming grant of no-evidence summary judgment, that defendant had breached duty to plaintiff). Accordingly, we hold that the trial court did not err in granting no-evidence summary judgment in favor of CBRE and ThyssenKrupp on Hudson's negligence claim.

We overrule Hudson's second issue.

**Conclusion**

We affirm the judgment of the trial court.

---

[7] In her response to ThyssenKrupp's no-evidence motion, Hudson relied on the doctrine of res ipsa loquitor to satisfy her burden on the breach-of-duty element. However, on appeal, Hudson does not assert that res ipsa loquitor would be a sufficient basis to reverse summary judgment on her negligence claim.

Richard Hightower
Justice

Panel consists of Justices Hightower, Countiss, and Farris.